UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHANNON GAY RAUCH,<br><br>              Petitioner,<br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>              Respondent. | Case No. 2:09-CV-581-MHW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court for its consideration is Petitioner Shannon Gay Rauch's ("Petitioner") Petition for Review (Dkt. 1) of the Respondent's denial of social security benefits, filed November 10, 2009. The court has reviewed the Petition for Review and the Answer, the parties' memorandums, and the administrative record ("AR"). For the reasons that follow, the Court will remand the matter to the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits on August 18, 2006. This application was denied initially and on reconsideration, and a hearing before

an Administrative Law Judge ("ALJ") was held on January 29, 2009. ALJ Chester heard testimony from Petitioner and Vocational Expert Daniel McKinney and issued a decision finding Petitioner not disabled on February 25, 2009. Petitioner timely requested review by the Appeals Council which denied her request for review on September 11, 2009.

Petitioner appealed the final decision to this Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 42 years of age. Petitioner completed high school and four years of college education. Petitioner's prior work experience includes flagger and meter reader.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had engaged in substantial gainful activity from July 10, 2005, the alleged onset date, through December 7, 2005, but not thereafter. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found that Petitioner had the following severe impairments: degenerative disc disease of the lumbar spine and scoliosis.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments. If a claimant's impairments do not meet or equal a

**MEMORANDUM DECISION AND ORDER - 2**

listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found that although Petitioner had the residual functional capacity to perform sedentary work, she was unable to perform her past relevant work as a flagger and meter reader.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. At step five, the ALJ determined that Petitioner had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except she would need a sit/stand option. The ALJ found that the claimant was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including the occupations: Assembly, small parts and Assembly, electrical; Production Checker/Inspector, small parts and products and Production Checker/Inspector, garment; and Cashier, ticket sales and Cashier II.

**STANDARD OF REVIEW**

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see*

**MEMORANDUM DECISION AND ORDER - 3**

*also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if

**MEMORANDUM DECISION AND ORDER - 4**

there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and an ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ takes careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner raises three challenges to the ALJ's decision that she is not disabled. First, Petitioner contends that the ALJ's finding that the statements concerning her symptoms were not credible was not supported by substantial evidence. Second, Petitioner claims that the ALJ did not properly consider the opinions and evidence of her primary treating physicians and placed too much weight on the opinions of the nonexamining State agency physicians. Lastly, Petitioner contends that the ALJ must consider *all* limitations, even if they are not "severe," that the ALJ's finding regarding Petitioner's residual functional capacity was not supported by substantial evidence and

**MEMORANDUM DECISION AND ORDER - 5**

the ALJ erred in relying on the testimony of the vocational expert in finding there were jobs in the national economy that Petitioner could perform.

1.  **Petitioner's Credibility**

Petitioner contends that the ALJ erred by failing to apply the applicable legal standards in making his credibility finding and by only relying on isolated parts of the record. Petitioner maintains an ALJ's unsupported statements that the objective evidence and opinions of Petitioner's treating physicians did not support her subjective allegations are not specific reasons for a credibility finding as required by the regulations. The lack of medical evidence is not, by itself, a clear and convincing reason to reject Petitioner's testimony.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Id*. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Unless there is affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Id*.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support

the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, as well as claimant's daily activities, claimant's work record and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider: location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* Soc. Sec. Ruling (SSR) 96-7p.

An ALJ cannot rely solely on lack of objective evidence in determining that a claimant is not fully credible. The ALJ must identify specific evidence in the record in support of his determination. Here, ALJ Chester relied on a variety of specific evidence, including inconsistent statements by Petitioner, that some of her medical complaints were not supported by the record and her daily activities were inconsistent with her allegations. Additionally, the ALJ noted that Petitioner's allegations of complaints and motivation for improvement were also questioned by her physicians.

**MEMORANDUM DECISION AND ORDER - 7**

As far as inconsistent statements, the ALJ noted that after her surgery on December 7, 2005, Petitioner claims she was off work for eight weeks while her employment records indicate she returned to work on January 10, 2006, less than five weeks after her surgery. Additionally, she testified that she only worked two to three days a week from July 10, 2005 to December 7, 2005, yet her wages for the eleven months in 2005 were only $2,500 less than a full year's wages from 2004. (AR 123, 126.)

The ALJ also noted that Petitioner's allegations regarding neck, mid-back and leg numbness were not medically documented in the record, there was no medical testing for any such conditions and few complaints to her health care providers. In March 2007, Petitioner was noted to have improvement in function. No additional therapy, surgical consultation or other medical treatment was recommended and Petitioner did not have medical treatment, other than medication refills, since August 2007.

The ALJ also found that Petitioner's daily activities were inconsistent with her allegations regarding her physical symptoms. The alleged date of onset is July 2005. The ALJ noted that in August 2005, the Petitioner reported an active lifestyle, that she was walking 10 to 16 miles a day at her job as a meter reader and was snowmobiling, biking and hunting. (AR 250.) The ALJ also noted that Petitioner's Function Report dated September 26, 2006, indicated that she did household chores, shopped, cooked and drove her children to activities. (AR 151- 165.) Additionally, it was noted that she spent a weekend doing yardwork in April 2007 and that at the time of the hearing, she was taking

two college courses. (AR 47, 307.)

Lastly, the ALJ noted that Dr. Minick, an internist, stated that Petitioner's complaints were "very subjective . . . non specific . . . somewhat somatic . . ." (AR 248.) Also, Dr. White, who treated Petitioner for her post-surgery Egoscue therapy, opined that Petitioner was more interested in obtaining disability status than in becoming pain free. (AR 274.)

The Court finds there is substantial evidence in the record to support the ALJ's conclusion that Petitioner's statements concerning the intensity, persistence and limiting effects of her physical symptoms were not fully credible. The ALJ did not solely disregard Petitioner's statements because of lack of objective medical evidence. Rather, the ALJ relied on credibility-finding techniques supported by law, such as inconsistent statements, evidence of daily activities, her work record and statements of her physicians.

## 2. Physicians' Opinions

Petitioner contends that the ALJ erred in giving great weight to the medical source statements of the nonexamining State agency physicians while discounting the statement of her primary treating internist, Dr. Buratto.

Ninth Circuit case law distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source

than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d at 1216; *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

Reports of treating physicians submitted related to Petitioner's work-related ability are persuasive evidence of a claimant's disability due to pain and her inability to engage in any form of gainful activity. *Gallant v. Heckler*, 753 F.3d 1450, 1454 (9th Cir. 1984). Although the ALJ is not bound by expert medical opinion on the issue of disability, he must give clear and convincing reasons supported by substantial evidence for rejecting such an opinion where it is uncontradicted. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Gallant*, 753 F.2d at 1454 (citing *Montijo v. Sec'y of Health & Human Servs.*, 729 F.2d 599, 601 (9th Cir. 1984); *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir. 1981)).

However, an ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Petitioner's account of her activities of daily living is another item that can be considered by the ALJ in determining what weight to give to a physician's opinion. *See Morgan v. Comm's of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

Here, the ALJ determined that little weight would be given to Dr. Buratto's opinion because the doctor's own records indicate that prior to October 2007, Petitioner had been seen only once in March 2007, once in 2006 and approximately four times in 2005, all primarily for medication refills. Frequency of examination is one consideration an ALJ may consider when evaluating medical opinions. 20 C.F.R. § 404.1527(d)(2)(i). The ALJ also found the limitations imposed by Dr. Buratto (sitting for a total of 1 hour in

**MEMORANDUM DECISION AND ORDER - 11**

an 8 hour day, walking for a total of 1 hour in an 8 hour day, etc.) were in stark contrast to Petitioner's own reported activities of daily living. Evidence of a claimant's daily activities is one factor an ALJ may consider in evaluating a treating physician's opinion. The ALJ concluded that Dr. Buratto's opinions appeared to be "a statement of a benevolent physician attempting to assist his patient based upon her subjective complaints and in light of pending litigation for disability benefits." (AR 19.)

As noted in the previous section, the ALJ correctly discredited Petitioner's complaints regarding the persistence and limiting effects of her physical symptoms. Accordingly, as Dr. Buratto's medical source statement relied on Petitioner's self-reported allegations of pain (AR 315), the ALJ properly discredited the physician's opinions to the extent they were based on Petitioner's complaints. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (treating physician's opinion that is based on a patient's subjective characterization of symptoms is reasonably discounted when the ALJ finds the claimant less than credible). Additionally, the ALJ noted that Dr. Buratto's statements were not consistent with those of other examining and treating physicians, including Dr. Yeung and Dr. White. Petitioner's surgeon, Dr. Yeung, opined that Petitioner could do sedentary work following her surgery in December 2005. (AR 220.) Petitioner's physician for her post-surgery Egoscue therapy, Dr. White, reported decreased pain, nearly full range of motion and increased functioning with exercise. (AR 266-284.)

An opinion that is conclusory, as is the opinion of Dr. Buratto in the medical

source statement, and inconsistent with the rest of the evidence is properly rejected. *Meanel v. Apfel*, 172 F.3d 1111, 1113-1114 (9th Cir. 1999). The ALJ has given clear and convincing reasons for rejecting Dr. Buratto's opinion that are backed by substantial evidence in the record.

Petitioner also takes issue with the weight given to the State Agency Physician's opinions. Although the opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An ALJ may not ignore the opinions of State agency physicians, even though he is not bound by their opinions. The ALJ must explain the weight given to the opinions in his decision. *See* SSR 96-6, *available at* 1996 WL 374180. The ALJ did not err by placing weight on the opinions of Dr. Coolidge and Dr. Dickey as their opinions are consistent with the other evidence in the record.

3.  **Residual Functional Capacity Finding & Ability to Perform Jobs in the National Economy**

The Petitioner argues that in making his residual functional capacity (RFC) finding, the ALJ failed to consider *all* of her limitations and that even 'non-severe' limitations must be considered by the ALJ. Petitioner claims the ALJ erred in discounting her complaints of neck, mid-back and leg numbness and erroneously found that these were not medically documented in the record. Further, Petitioner contends that the ALJ

erred in relying on the testimony of the vocational expert (VE). Although the ALJ assigned a sedentary RFC to Petitioner, Petitioner contends that the jobs identified by the VE are not sedentary positions, but rather characterized as light or medium exertional. Petitioner also claims the VE identified job positions with the incorrect DOT section number. Further, the VE did not explain any of the conflicts in his testimony.

A claimant's residual functional capacity is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). An ALJ considers all relevant evidence in the record when making this determination. *Id*. It is "proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). Unsupported limitations may be excluded. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). In *Osenbrock*, the Ninth Circuit found that the omission of a mental impairment from the hypothetical question was supported by substantial evidence in the record because the petitioner's depression was found to be a mild impairment, which had no significant interference with his ability to perform most recent work-related activities. *Osenbrock*, 240 F.3d at 1165.

In this case, the ALJ included the limitations supported by substantial evidence in the record in making his RFC determination and in posing his hypothetical question to the vocational expert. If a limitation is not supported by the record, it does not need to be included in this process. The ALJ noted that although there were complaints of mid-back and neck pain, there was no medical testing done for these complaints and no treatment

**MEMORANDUM DECISION AND ORDER - 14**

after August 2007. As discussed previously, the Court held that the ALJ did not err in finding that some of Petitioner's complaints were not credible or unsupported by objective medical evidence. Accordingly, these limitations were properly excluded.

At step five in the sequential process, the Commissioner has the burden of demonstrating that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). The Commissioner can meet this burden through the testimony of a vocational expert (VE) or reference to the Medical Vocational Guidelines. *See Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983).

In determining whether work exists in the national economy, the Social Security Administration takes "administrative notice of reliable job information available from various governmental and other publications," including the Dictionary of Occupational Titles (DOT), published by the Department of Labor. 20 C.F.R. § 404.1566; 20 C.F.R. § 416.966. To address the problems that arise when occupational evidence provided by the vocational expert is in conflict with information in the DOT, the Social Security Administration issued a ruling "to clarify . . . standards for identifying and resolving such conflicts." *See* SSR 00-4p.

The Ninth Circuit has held that SSR 00-4p mandates that an ALJ cannot rely on VE testimony without inquiry into and explanation of any potential conflicts with the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). When a VE testifies at

**MEMORANDUM DECISION AND ORDER - 15**

a hearing, an ALJ must ask the VE if his testimony is consistent with the occupational information found in the DOT and if a conflict exists, ask the VE for a reasonable explanation. *Valenzuela v. Astrue*, 2009 WL 1537876, *3 (N.D. Cal. June 2, 2009). However, such a failure of inquiry is not by itself cause to reverse the ALJ's decision. The ALJ's procedural error is harmless if no conflict existed or if the VE provides sufficient support for his conclusion so as to justify any potential conflicts. *Massachi*, 486 F.3d at 1154, n. 19.

Petitioner argues that is the duty of the ALJ to inquire about and resolve any inconsistencies between a VE's testimony and information provided in the DOT. Specifically, Petitioner contends that the ALJ erred in relying on the VE's testimony because the majority of the jobs that the VE identified were not "sedentary" but instead performed at a light or medium exertional level. Further, the VE incorrectly identified the DOT number for many of the positions he identified.

Respondent counters that the VE did identify two sedentary positions, Production Checker/Inspector and Production Checker/Inspector, Garment Industry that exist in significant numbers in the national economy. Respondent contends that one job title, with 4,000 jobs in Idaho, Washington and Oregon and more than 115,000 jobs nationwide, is a sufficient number of available jobs and the ALJ may make a step five determination based on this information.

During the hearing, the ALJ took testimony from vocational expert McKinney. At the beginning of his inquiry, the ALJ asked the VE to inform him if his testimony was

**MEMORANDUM DECISION AND ORDER - 16**

contradicted by the DOT. (AR 53.) Once the ALJ proposed a hypothetical, the VE opined that the claimant would be capable of performing sedentary, unskilled work with a sit/stand option. (AR 54.) The VE then went onto identify three categories of jobs: first, small parts assemblers and electronic workers; second, product inspectors and checkers, for small parts or garments; and third, cashier jobs such as ticket seller or cashier II.[1] (AR 54-55.)

While this case presents a different situation than presented to the Ninth Circuit in *Massachi*, it is still instructive. Here, the ALJ did inquire with the VE about any inconsistencies between his testimony and the DOT. However, the VE never identified any inconsistencies, although there were in fact many. Most importantly, many of the jobs identified by the VE were not sedentary positions but rather light or medium exertional. The ALJ relied on the VE's testimony regarding these jobs and cited all three categories in his decision before concluding: "Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (AR 21.)

The Ninth Circuit in *Massachi* found that even if the directives of SSR 00-4p were

---

[1] The Court agrees with Petitioner's position that the DOT numbers identified by the VE do not match the job titles provided. For example, the VE identified the occupation Assembly, electrical worker at DOT 679.685-010. However, the occupation actually found at DOT 679.685-010 is Machine Operator, Ceramics, a light exertion position.

not complied with, so long as any error was harmless, the case would not need to be remanded. 486 F.3d at 1154, n. 19. The *Massachi* court noted harmless error would exist if there was no conflict between the VE's testimony and the DOT or if the VE provides sufficient support for his conclusions to justify any potential conflicts. *Id*.

In this case, there was a conflict between the VE's testimony and the DOT. The VE did not provide sufficient support for his conclusions that explains these conflicts. It would seem that under *Massachi*, if a court finds a situation like this to amount to harmless error, the case need not be remanded. The Court does not find itself in that position. While the Respondent is correct that courts have found that jobs with numbers in the 1000's are of a "significant number of jobs in the national economy," the Court cannot say that the conflicts and inconsistencies in the VE's testimony that were relied upon by the ALJ resulted in "harmless error." *See, e.g., Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (between 1,000 and 1,500 jobs sufficient); *Barker v. Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1478-79 (9th Cir. 1989) (1,266 jobs sufficient). The ALJ clearly relied on the VE's testimony about all three categories of jobs when finding there was a significant number of jobs in the national economy and therefore, concluded that Petitioner was not disabled. To say that this was harmless error and the ALJ would have reached the same decision if he had known of the errors in the VE's testimony requires too much speculation by the Court. Although the ALJ inquired about any contradictions between the VE's testimony and the DOT, the VE never informed the ALJ

of any contradictions nor provided any sort of explanation for them. Most of the jobs identified by the VE, and cited by the ALJ, are not within Petitioner's residual functional capacity and further, they were incorrectly identified by the VE. This causes difficulty in discerning exactly what positions the VE is referring to in his testimony. Respondent states that the second category of jobs identified by the VE, that of production inspectors/checkers of small parts or garments, is referring to the position of Production Clerk found at DOT 221.382-018. The description found at DOT 221.382-018 describes a clerical production clerk, performing duties such as compiling and recording production data. The Court cannot discern whether this is the same position the VE was referring to when he noted that 4,000 jobs would exist in the tri-state area and 115,000 job nationally. Based on this record, the Court cannot find that the errors in the VE's testimony, which were relied upon by the ALJ, resulted in harmless error.

Accordingly, due to the testimony of the vocational expert being inconsistent with the Dictionary of Occupational Titles and the reliance clearly placed on the vocational expert's testimony by the ALJ, the Court will remand this matter for further proceedings.

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that** Petitioner's Petition for Review (Docket No. 1) is **GRANTED**. This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion. This Remand shall be considered a "sentence

four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. Cir. 2002).



DATED: March 29, 2011

Honorable Mikel H. Williams
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 20**